**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CASE NO. 21 Mag. 499** |
| | | **21 Cr. 447** |
| **MICHAEL STEVEN PERKINS** | : | |

**GOVERNMENT'S MEMORANDUM
IN SUPPORT OF PRETRIAL DETENTION**

  The United States of America, by and through counsel, the Acting United States Attorney for

the District of Columbia, respectfully submits this memorandum in support of its motion that the

defendant, Michael Steven Perkins, be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A).

There are no conditions or combination of conditions which will reasonably assure his appearance of

as required and ensure the safety of any other person and the community.   The Court should

therefore order him detained pursuant to 18 U.S.C. § 3142(e).

  The government respectfully requests that the following points and authorities, as well as

any other facts, arguments and authorities presented at the detention hearing, be considered in the

Court's determination regarding pre-trial detention.

**Factual Background**

  1.  **The Attack on the United States Capitol on January 6, 2021.**

  The United States Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions

around the U.S. Capitol include permanent and temporary security barriers and posts manned by

U.S. Capitol Police. Only authorized individuals with appropriate identification are allowed access

inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College for the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael Pence, who is also the President of the Senate, was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Michael Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the U.S. Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the U.S. Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, and Vice President Michael Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During the course of the violent protests, several individuals were armed with weapons including bats, pepper spray, sticks, zip ties, as well as bulletproof vests and anti-tear gas masks. During the course of the violent protest, several law enforcement officers were assaulted and injured by these violent protesters while attempting to protect the U.S. Capitol and the individuals inside of the building. These assaults occurred both inside of the Capitol, as well as on the steps outside of the Capitol and the grounds of the Capitol. Hutchinson, as detailed below, is charged with assault, as well as other criminal violations.

## 2.  Michael Perkins's Criminal Conduct

On January 6, 2021, Perkins, along with his four codefendants – Jonathan Pollock, Joseph Hutchinson, Joshua Doolin, and Olivia Pollock -- engaged in a coordinated effort to attack law enforcement officers at the U.S. Capitol.   Perkins, his codefendants, and others who engaged in the attacks were part of a larger group of individuals who appear to have traveled together from the Washington Monument to the Capitol grounds on the afternoon of January 6, 2021.   Many members of this group are related and/or from the same area of Florida and likely planned their travel both to and from Washington, D.C. and within the district in concert with each other.

In fewer than 20 minutes, between approximately 1:56 p.m. and 2:12 p.m., the core group

of the five charged defendants (as well as several others who are not charged) participated in at least four bouts of assaultive conduct against U.S. Capitol Police ("USCP") and/or Metropolitan Police Department ("MPD") officers who were protecting the west side of the Capitol building. Throughout the course of the day, several members of the group were wearing military-style ballistic vests, some of which displayed matching patches.   Perkins traveled with this core group for a portion of the afternoon and personally participated in at least two assaults.

   **a. Before 2:04 p.m.**

   At approximately 1:56 p.m., Perkins's co-defendant, Jonathan Pollock, and another individual, Associate-2, each charged towards a line of police officers stationed along a set of steps at the west side of the Capitol where low metal fences separated the crowd and the police officers. Jonathan Pollock and Associate-2 each brandished a flagpole pointed at the line of officers. Officers wrestled the flagpoles away from Jonathan Pollock and Associate-2, causing Jonathan Pollock to fall backwards into the crowd.   After Hutchinson helped Jonathan Pollock to his feet, Jonathan Pollock charged at the metal fence, throwing his shoulder into it and pushing it forward, while shouting "Let's Go!"

   Hutchinson and Associate-2,[1] along with other rioters in the crowd, grabbed the fence, pulling it away from the line of officers and providing Jonathan Pollock and other rioters with unobstructed access to the officers.   Jonathan Pollock then charged the police line, jumping over other rioters to attack police officers.   Jonathan Pollock then pulled one police officer down the steps, kneed and punched another officer in the face, then punched a third officer in the face and

---

[1]  Individuals referenced in the Complaint as Associate-2 and Associate-5 have not been charged in connection with this investigation.

pushed that officer to the ground by holding his neck in a choking action.   While Jonathan Pollock was assaulting these officers, Perkins was present nearby in the crowd:[2]



*See* Government Exhibit 1.

   **b.   2:04 p.m.**

   Less than ten minutes later, at approximately 2:04 p.m., Perkins joined the melee.   By this point, the metal fences separating the rioters from the line of officers had been overrun, and the crowd was now held back by a line of police officers with riot shields.

   Perkins and another individual ("Associate-5") pushed Hutchison from behind, propelling him at the line of police officers.   Hutchison then squared-off into a fighting stance, and began punching at the faces of the officers in the line.   Government Exhibits 2 and 3, excerpted below,

---

[2]   In the Government's exhibits, Perkins is notated in dark blue, Jonathan Pollock is notated in green, Hutchison is noted in grey, Associate-2 is notated in orange, Doolin is notated in maroon, Associate-5 is notated in red, and Olivia Pollock is notated in light blue.

depict Perkins, bending forward, after pushing Hutchinson (Ex. 2) and Hutchinson engaging with the line of officers (Ex. 3):



*See* Government Exhibit 2.



*See* Government Exhibit 3.

Meanwhile, Jonathan Pollock and Associate-2 again charged the line of officers. Associate-2 was holding a flagpole, which he used to push other rioters out of the way. Jonathan Pollock grabbed a riot shield that a police officer was holding and engaged in a tug-o-war with the officer for several seconds, until Jonathan Pollock pulled the officer down the steps, broke the officer's grasp, and took the shield.

Jonathan Pollock then charged up the steps, holding the shield in front of himself and propelled from behind by two other rioters, and slammed into the line of officers. Joshua Doolin, bracing the flagpole that had been dropped by Associate-2 on his shoulder, advanced up the steps, pointing the flagpole at the line of officers, before being turned back by what appears to be

chemical spray and dropping the flagpole.   Perkins then picked up the flagpole and threw it in the direction of Jonathan Pollock and the line of police officers:



*See* Government Exhibit 4A.

After that, a police officer was pulled into the crowd of rioters at the base of the steps. As several other police officers rushed into the crowd to assist the officer, Perkins picked a flagpole up off of the ground.   Perkins then thrust the flagpole into the chest of a police officer – who was running to assist the officer in the crowd:



*See* Government Exhibit 4B.



*See* Government Exhibit 4C.



*See* Government Exhibit 5.



*See* Government Exhibit 6.

Perkins then raised the flagpole over his head, brought the flagpole down in the direction of another officer, and appears to have struck that officer in the back or the back of the head.



*See* Government Exhibit 7.



*See* Government Exhibit 8.

### c.   After 2:04 p.m.

After this series of assaults, members of the core group of co-defendants, continued to direct violence at the officers on the west side of the Capitol Grounds.   *See* Complaint ¶¶ 35-38. Rather than disassociate himself from this violent crew, Perkins stayed with them, at least until approximately 2:58 p.m., when he stood with the group as Jonathan Pollock assaulted yet another officer, by trying to pull that officer over a railing:



*See* Government Exhibit 9.

### 3. Procedural History

On June 25, 2021, Perkins was charged by complaint (the "Complaint") with: (1) Assaulting, Resisting, or Impeding Certain Officers or Employees with a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b), and 2; (2) Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. 1752(a)(1); (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (4) Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. 1752(a)(4); and (5) Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F).

- 13 -

Perkins was arrested in the Middle District of Florida on June 30, 2021 and presented in that district on that same date.   At the hearing, the Government orally moved for the defendant's detention pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) and Perkins's counsel requested that the detention hearing be conducted in the District of Columbia.

On July 1, 2021, a grand jury in the District of Columbia returned indictment 21 Cr. 447 (the "Indictment") charging Perkins with (1) Assaulting, Resisting, or Impeding Certain Officers or Employees with a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b) (Count Six of the Indictment); (2) Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. 1752(a)(1) (Count Sixteen of the Indictment); (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Seventeen of the Indictment); (4) Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. 1752(a)(4) (Count Eighteen of the Indictment); and (5) Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Nineteen of the Indictment).

The Court set this matter for a detention hearing on Thursday, July 8, 2021 at 3:30 p.m.

## ARGUMENT

There are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. §3142(g). In consideration of these factors, the government respectfully submits that there are no conditions or combinations of conditions

which can effectively ensure the safety of any other person and the community.

## Nature and Circumstances of the Offenses Charged

During the course of the January 6, 2021, siege of the U.S. Capitol, multiple law enforcement officers were assaulted by an enormous mob, which included numerous individuals with weapons, bulletproof vests, and pepper spray who were targeting the officers protecting the Capitol. Additionally, the violent crowd encouraged others in the crowd to work together to overwhelm law enforcement and gain unlawful entry into the U.S. Capitol.

What is extremely troubling about the defendant's conduct is both the severity of his actions and the coordinated efforts he engaged in prior to, during, and after the assaults. As noted above, shortly before 2:00 p.m. on January 6, 2021, the defendant was part a large mob that substantially outnumbered law enforcement at a perimeter set up on the Capitol grounds. Within that larger mob, as can be clearly observed and as laid out in the Complaint, Perkins was part of a coordinated group of individuals attacking law enforcement officers.   First Perkins's co-defendants, primarily Jonathan Pollock, violently charged at the line of officers with a flagpole, and, once disarmed, grabbed, punched, kneed, and pushed the officers, all while Perkins stood by.   Rather than retreating from this violent conduct, Perkins joined in less than ten minutes later, supporting Hutchinson in his attack on the line of police officers.   Then, as officers descended into the crowd of rioters to assist another officer, Perkins grabbed a dangerous weapon – a flagpole – and thrust in into the chest of an officer.   He then raised the flagpole over his head and brought it down toward another officer, appearing to strike that officer in the back of the head.

All of the law enforcement officers whom Perkins and his co-defendant attacked were in

full uniform with the word "police" clearly visible.   The defendant's assaults contributed to the

escalation of violence on the Capitol grounds on the afternoon of January 6, 2021, and, contributed

to the ability of the large mob of individuals to successfully breach the U.S. Capitol, putting

additional law enforcement officers and members and staff of Congress at grave risk. The

defendant's actions aided other rioters who committed multiple other criminal acts inside the

building.

In the context of cases arising out of the January 6, 2021 assault on the Capitol, Chief

Judge Howell has identified six factors to be considered in assessing the nature and circumstances

of the offense charged:

> "(1) 'whether a defendant has been charged with felony or misdemeanor offenses';
> (2) 'any indication that a defendant engaged in prior planning before arriving at the
> Capitol'; (3) 'a defendant's carrying or use during the riot of a dangerous weapon';
> (4) 'coordination with other participants before, during, or after the riot'; (5)
> whether the defendant 'assumed either a formal or a de facto leadership role in the
> assault by encouraging other rioters' misconduct'; and (6) 'a defendant's words and
> movements during the riot' including whether he 'damaged federal property,'
> 'threatened or confronted law enforcement, or otherwise promoted or celebrated
> efforts to disrupt the certification of the electoral vote count during the riot.'"

*United States v. DeGrave*, 20 Cr. 90 (PLF), 2021 WL 1940536 at *7-8 (May 14, 2021) (citing

*United States v. Chrestman*, ___ F.Supp.3d ___, 2021 WL 765662, at *7-8).

Here, the defendant has been charged with a serious felony offense – assaulting a federal

officer with a dangerous weapon – in addition to misdemeanors.   He traveled within Washington,

D.C. with a group of individuals from Florida, many of whom are related.   And, once on the

Capitol grounds, he was part of a core group that stayed together during the course of several

assaults and moved together across the grounds.   While the government does not have evidence

that the defendant arrived at the Capitol grounds bearing a weapon, the defendant was easily able

to locate items that could be used to attack the police officers guarding the grounds and did not hesitate to strike at least two officers with a flagpole.

The defendant's actions were violent, criminal, coordinated, and represented a further dangerous escalation aimed at allowing other violent rioters to unlawfully enter the U.S. Capitol.

## Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is also quite strong and compelling. As noted above, the defendant was observed on police body worn cameras participating in the attack of law enforcement officers.   The defendant was also captured in other photographs and video footage throughout the day on January 6, 2021, where his face is clearly visible and the clothes he is wearing in the body work camera footage described above clearly identifiable. The evidence against this defendant is overwhelmingly strong, and accordingly, the weight of the evidence weighs heavily in favor of detention.

## Defendants' History and Characteristics

The government is not aware of any adult convictions of this defendant.   However, the defendant's actions, as demonstrated by his willingness to engage in multiple assaults on law enforcement officers with a dangerous weapon as part of a coordinated group in a violent mob should give this Court great concern about the danger he would pose to the community if released.

## Danger to the Community and Flight Risk

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of the defendant's detention. The charged offenses involve assaultive conduct aimed to stop the functioning of the United

States government, specifically to derail the certification of the electoral process, a cornerstone of our democracy.   The danger the defendant caused by assisting the violent mob cannot be understated.  The defendant was a spoke in the wheel that caused the historic events of January 6, 2021, and he is thus a danger to our society and a threat to the peaceful functioning of our community.

Given the above assessment of all four relevant factors, no condition, or combination of conditions, can ensure that the defendant will comply with court orders and abide by appropriate release conditions.

**<u>CONCLUSION</u>**

WHEREFORE, the United States respectfully requests that the Court grant the government's motion to detain the defendant pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney

*/s/ Benet J. Kearney*
Benet J. Kearney
N.Y. Bar No. 4774048
Assistant United States Attorney
1 Saint Andrew's Plaza
New York, New York 10007
(212) 637 2260
Benet.Kearney@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 6, 2021 I caused a copy of the foregoing motion to be served on defense counsel of record via email.

*/s/ Benet J. Kearney*

Benet J. Kearney
Assistant United States Attorney
