```
1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
2

3    United States of America,      ) Criminal Action
                                    ) No. 21-cr-447
4                    Plaintiff,     )
                                    ) DETENTION HEARING BY
5    vs.                            ) VIDEO
                                    )
6    Michael Steven Perkins,        ) Washington, DC
                                    ) July 13, 2021
7                    Defendant.     ) Time:  4:00 p.m.
     _____
8
              TRANSCRIPT OF DETENTION HEARING BY VIDEO
9                        HELD BEFORE
              THE HONORABLE JUDGE G. MICHAEL HARVEY
10            UNITED STATES MAGISTRATE DISTRICT JUDGE

11   _____

12                 A P P E A R A N C E S

13   For the Plaintiff:      Benet Kearney
                             DOJ-USAO
14                           One Saint Andrew's Plaza
                             New York, NY 10007
15                           212-637-2260
                             Email: Benet.kearney@usdoj.gov
16
     For the Defendant:      Nancy Clare MacEoin
17                           FEDERAL COMMUNITY DEFENDER OFFICE
                             601 Walnut Street
18                           Suite 540 West
                             Philadelphia, PA 19106
19                           215-928-1100
                             Email: Nancy_maceoin@fd.org
20   _____

21   Court Reporter:         Janice E. Dickman, RMR, CRR, CRC
                             Official Court Reporter
22                           United States Courthouse, Room 6523
                             333 Constitution Avenue, NW
23                           Washington, DC  20001
                             202-354-3267
24

25
```

1          THE COURT:  It's Judge Harvey.  Let's go ahead and

2     call the case, Mr. Tran.

3          THE COURTROOM DEPUTY:  Yes, Judge.  This is case

4     21-CR-447, the United States of America versus Michael Steven

5     Perkins.  This is scheduled to be a continued detention hearing

6     held by video.

7          Will the parties please introduce themselves to the

8     Court, beginning with the government.

9          MS. KEARNEY:  Good afternoon, Your Honor.  Benet

10    Kearney for the United States.

11         MS. MacEOIN:  Good afternoon, Your Honor.  Nancy

12    MacEoin on behalf of Mr. Perkins.

13         PRETRIAL SERVICES:  Shay Holman, pretrial services.

14         THE COURT:  Good afternoon.  Counsel for Mr. Perkins,

15    is Mr. Perkins willing to again waive his right to an in-person

16    proceeding and proceed by video teleconference here today,

17    pursuant to the Chief Judge's standing order?

18         MS. MacEOIN:  Yes, he is, Your Honor.

19         THE COURT:  I want to remind everyone listening on

20    the public line that recording and rebroadcasting of these

21    proceedings is strictly prohibited under the Chief Judge's

22    standing order.  If you were to violate that order, various

23    sanctions could result, including removal of press privileges,

24    exclusion from future proceedings in the future, and other

25    sanctions that I deem appropriate.  So please no recording or

1   rebroadcasting of these proceedings here today.

2           I'm prepared to go ahead and issue my decision.  I'm

3   going to discuss it at some length.

4           The detention decisions in these Capitol cases are

5   always very challenging, each one must be considered on its own

6   merits and there are many factors to consider.  This case, with

7   respect to Mr. Perkins, is no different.  Certain aspects of

8   this case weigh in favor of his release and certain do not.

9           That said, after having considered the full record of

10  this case as presented in the charging documents and the

11  parties' briefing in support of and in opposition to the

12  government's motion for pretrial detention and all the exhibits

13  thereto and the parties' arguments during the hearing last

14  week, I do find that the government has not demonstrated by

15  clear and convincing evidence that Mr. Perkins' release would

16  pose a danger to the community that sufficiently stringent

17  release conditions could not reasonably mitigate.  So at the

18  end of these proceedings I'm going to be ordering his release

19  and setting conditions of release, but I do want to explain my

20  thinking.

21          Before noting or reviewing the basis for my decision,

22  I do note that, as the government conceded at the detention

23  hearing, the defendant is not a serious risk of flight.  Again,

24  there's no real argument that he was.  Based on my own review

25  of the pretrial services report, I do find that he's not a

1       serious risk of flight.  He has established ties to his

2       community; he lives with his wife and kids, is employed, has no

3       record of failing to appear for court or failing to follow

4       court orders.

5               With respect to dangerousness, which is the basis on

6       which the government is seeking to have the defendant held, the

7       Bail Reform Act requires the Court to look at four factors.

8       The first is the nature and circumstances of the offense.  The

9       government alleges, a few times, both in their papers and also

10      at the hearing in this matter, they focus on the fact that the

11      defendant seemed to be part of a larger group.  And I'm going

12      to just spend some time with respect to that part of the

13      government's factual proffer, because it seemed to be important

14      to the government.

15              It uses that word a lot, they that he was part of a

16      larger group.  A group that the government alleges appeared to

17      have traveled together to D.C. on January 6th and then traveled

18      from the Washington Monument to the Capitol grounds the

19      afternoon of the 6th, and even engaged in assaultive conduct

20      together that afternoon.  That is what the government alleges.

21              Only five members of that group are charged in the

22      complaint.  Two of those individuals, Jonathan Pollock and

23      Olivia Pollock are related, I think they're siblings.  The

24      government does not allege that Mr. Perkins is related to

25      anyone in the group, but alleges that he, along with other

1      members of the group, is from the same area of Florida and,

2      quote, likely planned, quote, their travel both to and from

3      Washington, D.C., within the District while they were here and

4      during events at the Capitol at the 6th.  I think the

5      government uses the word "group" in a rather lose sense of the

6      word, at least as compared to some of these other Capitol

7      cases.

8              There's no conspiracy charged here.  The defendants

9      are merely codefendants, they're not alleged coconspirators.  I

10     imagine that the government charged them that way because they

11     believe there's insufficient evidence to charge them with any

12     sort of illegal conspiracy.  Unlike in other Capitol cases

13     here, the government has not presented any evidence that I can

14     see that the defendant or his codefendants were part of any

15     organized militia or antigovernment group.

16             There's no evidence of group insignia, of members of

17     the group, you know, wearing the same outfits or colors or

18     anything of that sort.  The government has stated that two of

19     the defendants, the Pollocks, were wearing patching patches.

20     I'm not exactly sure why the government put such emphasis on

21     it, to the extent it's trying to suggest that the patches are

22     equivalent of some sort of group or military-like insignia.  I

23     don't think they've begun to demonstrate anything of the sort

24     here.  The government stated at the hearing that the patches

25     had some sort of cat logo on them.  Without more, I'm not going

1    to repute anything sinister based on those patches.  In any

2    event, Mr. Perkins did not have any patches; he was casually

3    dressed.  The Pollocks did have tactical vests on; Mr. Perkins

4    did not.  It appeared to me that he came dressed in a hoodie,

5    as I pointed out at the hearing.

6          Nor has the government, I believe, presented any

7    clear and convincing evidence that Mr. Perkins or others in the

8    group had a shared goal to commit violence at the Capitol prior

9    to the riot beginning that day.  Indeed, the only evidence the

10   defendant and his codefendants were part of a group, that they

11   were, I think the government has proffered, moving together to

12   a certain extent and acting in concert -- that's the

13   government's allegation -- immediately prior to and during the

14   riot at the Capitol.

15         That's not a fact that I find particularly

16   illuminating with respect to assessing this defendant's danger

17   to the community.  The kind of group the government proffers

18   here fairly described many -- fairly describes others who

19   participated in the events at the Capitol on January 6; that

20   is, individuals, friends, family who traveled to and moved

21   together at the Nation's Capitol on the 6th.

22         In my view, evidence of such a group is not

23   sufficiently persuasive of the issue of the danger of its

24   individual members without some other evidence concerning the

25   group identity, cohesiveness, beliefs or intent or propensity,

1   most importantly, towards violence; any evidence regarding the

2   particular defendant here, Mr. Perkins', participation and role

3   in that group, adoption of its beliefs or goals.  It could be

4   that Mr. Perkins and his codefendants are members of a sort of

5   violent, antigovernment group bent on continuing future acts of

6   political violence, but I'm not going to assume that is the

7   case based on the record before me.  That is something I

8   believe the government has to prove and in my view has failed

9   to do so by clear and convincing evidence here in this case.

10          Indeed unlike in other Capitol cases, it has provided

11   no evidence, not a single text, email, social media post,

12   witness statement or any other evidence indicating that the

13   defendant -- or his codefendants, what their intent, purpose,

14   beliefs or goals were with respect to the attack on the

15   Capitol, or any continued propensity for political violence

16   thereafter.

17          For what it's worth, I'm not suggesting that to be

18   held pretrial on one of the Capitol cases the government needs

19   to provide evidence that a given defendant was an active member

20   of an antigovernment group with a propensity towards violence,

21   but it is a factor that this Court has looked at in other

22   cases.  And the government has asserted, in its detention memo

23   and again at the hearing, that the fact that the group -- or,

24   this defendant was moving on the 6th as part of a group, all

25   from somewhere in and around the Lakeland, Florida area should

1    be somehow material to the defendant's detention analysis.  So

2    that's why I've addressed it at some length here.

3          I do not believe the government has demonstrated what

4    it has in other cases with respect to this alleged group.  For

5    the same reason, I think there is an insufficient evidentiary

6    basis here to attribute to Mr. Perkins the assaultive conduct

7    of his codefendants for purposes of his detention analysis.

8    Again, he's not charged with a conspiracy.  The government

9    alleges, for many of the other assaults on law enforcement

10   allegedly perpetrated by his codefendants, that Perkins, while

11   present nearby in the crowd, apparently did nothing.  He was

12   not an active participant in the other assaultive conduct of

13   his codefendants.

14         The government argues that Mr. Perkins should have

15   withdrawn as his codefendants were engaged in assaults, rather

16   than standing idly by.  While that may certainly be true,

17   pretrial release is a presumption in our judicial system and

18   pretrial detention is the exception, I think justifiable only

19   if the government provides, again, clear and convincing

20   evidence of this defendant's danger to the community that can

21   only be addressed by detaining the defendant pretrial.  I do

22   not think that on allegation defendant stood by while his or

23   her friends or other associates assaulted law enforcement

24   during the riot moves the needle very far in assessing the risk

25   of danger this defendant's release poses to the community, and

1    it strikes me is a risk that could be sufficiently mitigated by

2    stringent conditions of release, including prohibiting the

3    defendant from associating with those people during the

4    pendency of this case.

5          What Mr. Perkins did do -- and it is serious --

6    according to the complaint, what he actually did engage in

7    himself is a series of assaults or assaultive conduct against

8    law enforcement starting at 2:04 p.m. on January 6th.  First

9    Mr. Perkins and another individual pushed Mr. Hutchinson on one

10   of his codefendants from behind, propelling him at a line of

11   police officers.  Hutchinson then squared off in a fighting

12   stance and began punching at the faces of the police officers

13   who were in that line.  Mr. Perkins then, shortly thereafter,

14   picked up a flagpole and threw it in the direction of another

15   of his codefendants, Mr. Pollock, and that line of police

16   officers.

17         The government stated at the detention hearing, I

18   believe, that Mr. Perkins is not charged for any of that

19   assaultive conduct.  Rather -- certainly more seriously --

20   seconds after that, Mr. Perkins picked up what appears to be a

21   different flagpole from the ground, he pushed it into the chest

22   of an officer and then moments after that raised the flagpole

23   over his head and brought it down in the direction of another

24   officer, appearing to strike the officer in the back or back of

25   the head.

1          Mr. Perkins is charged with a federal felony of

2     assault on a law enforcement officer for those two assaults and

3     assaulting them with a dangerous weapon.  Unlike in some of the

4     Capitol cases that have come before me, the government has not

5     alleged, however, that any law enforcement officer was injured

6     as a result of Mr. Perkins' conduct.  Mr. Perkins' alleged

7     assaults occurred -- I should note as well, I think it's

8     important -- quite quickly.  The government estimates that from

9     start to finish this string of assaultive conduct from

10    Mr. Perkins lasted about 40 to 50 seconds.

11          The videos of the assaults, which I have seen, show

12    that they occurred during a melee with law enforcement

13    involving Mr. Perkins and other rioters.  And I must say,

14    having viewed the videos, it's a little hard to see what's

15    happening in the videos, it happens so quickly.  And I was

16    greatly aided in that effort during the hearing when the

17    government slowed down the video, so you could actually see

18    what it was that they allege Mr. Perkins did with respect to

19    his assaults on law enforcement.  And you can see the

20    individual that they allege Mr. Perkins engaged in those

21    assault -- that assaultive conduct as I have described.

22          But in doing so, I think it also emphasizes the

23    defense's points that Mr. Perkins' assaults occurred very

24    quickly, almost during a blink of an eye during that riot.  The

25    government does not allege that Mr. Perkins actively engaged in

1   any other assaultive conduct, other than at 2:04 p.m. on

2   January 6th, nor does it have any other evidence that

3   Mr. Perkins or his codefendants destroyed property, stole

4   property or even entered the Capitol.

5             Nevertheless, for his alleged criminal conduct

6   Mr. Perkins stands charged with five counts; very serious

7   felony, punishable up to 20 years in jail, with assaulting a

8   law enforcement officer with a dangerous weapon.  He also faces

9   four misdemeanors.  Those are significant charges, certainly

10  that felony charge is, and they appropriately reflect the

11  seriousness of what Mr. Perkins' alleged criminal conduct as

12  described in the complaint and indictment was.

13            As I and other judges on this court have previously

14  observed, though, the fact that the assault was against law

15  enforcement officers who are literally forming a wall, seeking

16  to protect our democracy, makes that conduct, if proven, all

17  the more reprehensible.

18            But the detention decision the Court makes today is

19  not about punishment for Mr. Perkins' past alleged criminal

20  conduct on January 6, rather, the detention decision is focused

21  on a forward-looking assessment of the likelihood that this

22  defendant will continue to engage in political violence during

23  the pendency of this case were he to be released and, again,

24  whether conditions of release can be fashioned that would

25  sufficiently mitigate that risk.

1    As to that determination, I think Chief Judge

2    Howell's decision in *Chrestman* provides a number of factors to

3    evaluate the nature and circumstances of the defendant's

4    conduct during the riot for purposes of this first Bail Reform

5    Act factor, which is, again, assessing the nature and

6    circumstances of what it is the government alleges that he did.

7    Those factors include whether the defendant is charged with a

8    felony, whether he confronted law enforcement during the

9    assault on the Capitol, and whether he used a dangerous weapon

10   during the riot.

11       Certainly defendant's alleged criminal conduct here

12   meets all of those factors.  And again, those factors alone, in

13   my view, qualify his actions as very serious and worthy of

14   consideration for detention.  Indeed, as the D.C. Circuit

15   observed in *Munchel*, those who actually assaulted police

16   officers on January 6 should be considered in a different

17   category of dangerousness, and I certainly agree with that.

18       The defendant's alleged conduct also raises, to use

19   the Chief Judge's language, quote, grave concerns about his

20   disregard for the institutions of the government and the rule

21   of law.  The Chief Judge found, in *Chrestman*, that factor

22   should be material to the detention analysis because one who

23   demonstrates such a disregard in the past may be expected to

24   ignore a Court's release conditions going forward.

25       Nevertheless, it is not the case that every defendant

1    charged with assaulting law enforcement on January 6th have

2    been ordered held pretrial by judges of this court.  Many have,

3    but not all have.  There's a line of decisions where, after the

4    consideration of other mitigating factors material to the

5    detention analysis, such individuals have been released under

6    strict conditions of supervision.  That is what happened

7    recently in the *Owens* case.  There are others as well.

8             I find *Owens* particularly instructive.  And that case

9    involved an individual who is charged with multiple assaults of

10   law enforcement with, like here, a nontraditional weapon.  In

11   that case there was the use of a skateboard; here, a flagpole.

12            Nevertheless, Chief Judge Howell found that other

13   factors mitigated the defendant's conduct in *Owens* with respect

14   to the detention decision.  Similar factors, I think, mitigate

15   Mr. Perkins' conduct here for purposes of the detention

16   analysis.  Like in *Owens*, there is insufficient record evidence

17   here that Mr. Perkins engaged in preparation or coordination

18   prior to the riot, or that he premeditated violence against law

19   enforcement that day.  Perhaps all of those things did happen,

20   again, with respect to Mr. Perkins, but the government needs to

21   prove it; in my view has not done so, and I'm not going to

22   assume that in the absence of such proof.

23            Given the record before me, Perkins' conduct during

24   the riot could fairly be described as somewhat spontaneous,

25   being caught up in the moment.  The absence of any other record

1    evidence demonstrating what his intent was there, his beliefs

2    were, any other evidence demonstrating that he's a member of an

3    organized group that planned for the riot or attack on the

4    Capitol on January 6th, given the lack of any evidence of him

5    having a formal, even de facto leadership role during the

6    assault, I believe that while the first bail reform factor --

7    factors, that is, the nature and circumstances of the offense

8    weighs in favor of detention, given the defendant's alleged

9    assaultive conduct on law enforcement with a weapon, it does

10   so, as the Chief Judge found in *Owens*, only modestly because of

11   these mitigating factors.

12            As for the strength of the government's evidence --

13   that's the second Bail Reform Act factor -- the government has

14   presented two body-worn camera videos which, when slowed down,

15   show the assaults on law enforcement which they attribute to

16   Mr. Perkins.  While the government has not identified any

17   witness who knows the defendant, has identified him as being

18   the person in the videos perpetrating the assaults, Mr. Perkins

19   was identified by law enforcement by comparing fairly clear

20   images from videos with his driver's license photo, the

21   surveillance of him by agents outside of his home.

22            So I accept the government's proffer on that point,

23   that he appears to be the person in the videos.  And I find it

24   sufficient for this factor to also weigh in favor of his

25   detention.  That said, the government has not proffered any

1    other evidence tying Mr. Perkins to the attack on the Capitol.

2    They searched his home upon his arrest and apparently did not

3    find any other incriminating evidence.  They have also

4    presented, again, no travel records, no phone records, no GPS

5    or cell tower records, no social media posts, no texts of

6    Mr. Perkins tying him to the events of the Capitol on January

7    6.  Therefore, I do not agree with the government's assessment

8    that its evidence with respect to his guilt is overwhelming.

9         In any event, I do find that this factor does still

10   weigh in favor of his detention.  But as I've said in other

11   cases, it is the factor which matters, in my judgment, the

12   least with respect to the four Bail Reform Act factors, that

13   this defendant still enjoys the presumption of innocence, even

14   during this detention analysis.

15        As for the third Bail Reform Act, the history and

16   characteristics of the defendant, it clearly, I think, weighs

17   in favor of the defendant's release.  The government really

18   doesn't argue otherwise in this case.  Mr. Perkins is 37 years

19   old, he's lived his whole life in the town in Florida where he

20   was born.  He's lived in his present residence, which he owns,

21   for eight years; he's been married for 13 years and lives with

22   his wife and two children.  He has other family members who

23   live nearby, with whom he is close.  He was an electrician for

24   13 years and now works as a handyman.  So he does have, in my

25   view, strong ties to the community where he lives.

1          According to the pretrial services report, he has no

2     drug, alcohol problems, or physical or mental health problems.

3     He has very little criminal history, most important to the

4     Court, and certainly none that indicates a propensity for

5     violence.

6          Doesn't appear that he's ever received a sentence of

7     incarceration.  His longest time in jail would appear to be him

8     waiting for this detention proceeding to be completed.  He has

9     only two adult convictions, and only one of note; that was 15

10    years ago.  He was found guilty of trespass at a construction

11    site and third degree theft.  He received 18 months probation

12    for that conviction, which he apparently completed

13    successfully, to his credit.

14         So there is nothing in the -- in his criminal record

15    that would suggest that he would not follow any conditions of

16    release that I night set for him.  He has no prior bench

17    warrants, no convictions for contempt or failure to appear for

18    court or any other indication that he's failed in the past to

19    comply with either pretrial or postconviction court

20    supervision.  Indeed, the only evidence the Court has is an

21    18-month period of probation.  And there's no record, at least

22    presented to me, of any violation of his conditions of

23    supervision in that case.  Also, no evidence in his record of

24    destruction of evidence or flight.  I would note, as well, that

25    it's been five months since January 6th, and the defendant was

1     arrested in his home where he's lived for eight years.

2           Nor, as other judges have noted with respect to other

3     Capitol defendants, is there anything in Mr. Perkins' history

4     that would suggest that he would present some particular

5     increased risk of danger to the community were he to be

6     released.  He's not a former member of the military, there's no

7     evidence that he's had combat training.  And again, there's no

8     evidence that he's a member of any organized militia or

9     organized extremist or antigovernment group, no cash or body

10    armor or illegal weapons or bomb-making materials were found in

11    his home.  Again, I only mention that because these are issues

12    which other judges in this court have found with respect to the

13    history and characteristics of other defendants might overwhelm

14    the fact that a given defendant has little or no criminal

15    history.  Mr. Perkins has none of that either.

16          So looking, I believe, at his record and history and

17    characteristics, it would appear that his alleged actions on

18    January 6 were an aberration in an otherwise law-abiding life.

19    So I do believe that this factor weighs strongly in favor of

20    pretrial release, as I believe he would follow conditions of

21    release that I would set for him.

22          The final Bail Reform Act factor and the ultimate

23    inquiry really is the nature and seriousness of the danger to

24    any person of the community that would be posed by the

25    defendant's release.  For many of the reasons I've already

1    stated, I do find that this factor also weighs in favor of

2    Mr. Perkins.  The government must ultimately prove by clear and

3    convincing evidence that arrestee/detainee presents an

4    identifiable and articulable threat to an individual or the

5    community.  As the D.C. Circuit recently observed in *Munchel*, a

6    defendant's detention based on dangerousness accords a due

7    process only insofar as the district court determines that the

8    defendant poses a, quote, concrete prospective threat to public

9    safety.  Such a threat must also be considered in context and,

10   quote, depends on the nature of the threat identified and the

11   resources and capabilities of the defendant.

12            In the particular context of the January 6th attack

13   on the Capitol, the D.C. Circuit in *Munchel* acknowledged that,

14   quote, it cannot be gainsaid that the violent breach of the

15   Capitol on January 6 was a grave danger to our democracy and

16   that those who participated could rightfully be subjected to

17   detention to safeguard the community.  Nonetheless, as the

18   Circuit held, this specific threat posed by the defendant was

19   to, quote, the transfer of power, end quote.  The Court must

20   consider, quote, the specific circumstances that made it

21   possible on January 6 for the defendant to threaten the

22   peaceful transfer of power where the presence of the defendant

23   was critical to defendant's ability -- presence of the group

24   was critical to the defendant's ability to obstruct the vote,

25   to cause danger to the community.  The District Court must

1   consider and explain how a particular defendant would be

2   capable of doing so now that the specific circumstances of

3   January 6th has passed.  That is a quote from the Circuit.

4   That is what the Circuit has said.

5          Put another way, as Chief Judge Howell observed in

6   the *Owens* case, quote, the D.C. Circuit has indicated that

7   merely showing the danger a person posed to others of the

8   community or even our democratic institutions on January 6 is

9   not enough to justify pretrial detention.  But, now that the

10  specific circumstances of January 6 have passed, the task is to

11  determine whether the defendant poses a threat of committing

12  violence in the future.  That's what the Chief Judge said.  And

13  again, it is the government's burden to prove that by clear and

14  convincing evidence.

15         Based on the totality of the evidence it has

16  submitted before me -- which again, is little more than a

17  recounting of what Mr. Perkins' alleged assaultive conduct was

18  during a 40- to 50-second period during the riot -- I find the

19  government as failed to meet that burden here with respect to

20  him.

21         Based on the record before the Court, the government

22  has not shown, I believe, by clear and convincing evidence the

23  defendant poses an ongoing danger to the community, outside the

24  context of the January 6th events at the Capitol.  Again, the

25  defendant has no history of violence before January 6 and a

1   very limited criminal record, as I've reviewed above.  Thus,

2   the only violent conduct allegedly committed by him occurred

3   while he was caught up -- I think the evidence can be read in

4   that way -- in the mob on January 6th, where the defendant

5   pretty obviously ignored signage about restricted areas of the

6   Capitol and allegedly used a flagpole to push one officer and

7   hit another officer.

8           Nothing in the record suggests, again, or no one has

9   proved that he planned for violence prior to the riot that day,

10  that he posted about his actions afterwards, that he otherwise

11  threatened law enforcement, either prior to or after January 6;

12  otherwise threatened our lawmakers prior to or after January 6,

13  or that he's, again, an active member of any organized violent

14  group who might do so, engage in political violence in the

15  future.

16          In the words of *Munchel*, nothing indicates that

17  Mr. Perkins continues to be committed to engaging in violent

18  behavior exhibited at the Capitol that poses such a grave

19  danger to our democracy.  In the five months since January 6th

20  the government has not presented any evidence of any other

21  statements or actions by this defendant showing that he's

22  committed to engaging in political violence going forward.  As

23  Chief Judge Howell observed in *Owens, Munchel* does set a high

24  threshold for the requisite finding of future dangerousness for

25  defendants charged with offenses with assaultive conduct

1    arising out of the January 6th events at the Capitol.  I do not

2    believe the government has met that threshold there.

3            To be sure, Mr. Perkins' alleged use of a flagpole to

4    assault law enforcement on January 6 is very serious and places

5    him, in the words of *Munchel*, in that different category of

6    dangerousness.  Nevertheless, as explained by Judge Bates in

7    the *Padilla* case, that *Munchel* dichotomy between those who

8    assaulted law enforcement and those who did not is useful, but

9    it's insufficient to absolve this Court of the need to probe

10   the precise nature of the defendant's actions -- including the

11   type of and any force employed -- when assessing a defendant's

12   dangerousness under the Bail Reform Act factors.

13           Chief Judge Howell directed, in *Owens*, intentional

14   and purposeful assaultive conduct, particularly involving

15   multiple instances of directly provocative and aggressive,

16   threatening and aggressive behavior and threatening actions

17   toward law enforcement on the 6th, when combined with verbal

18   threats before, during or continuing after that date, are all

19   indicia of the dangerousness that may warrant pretrial

20   detention.

21           Here, however, again, Mr. Perkins' assaultive conduct

22   was confined to a single burst of assaults during a 40- to

23   50-second period.  That was done without -- as I believe the

24   government has not shown otherwise -- planning, without the use

25   of conventional dangerous weapons.  It appears from the video

1    he picked up the flagpole off the ground and a moment later

2    used it against law enforcement in the midst of that mob, for

3    which he was no doubt an active participant; I'm not saying he

4    was not.

5             Nevertheless, for these reasons I do believe that the

6    presence of the group was critical, based on what the

7    government has shown me so far, the defendant's ability to

8    assault the police officer on January 6th, and that outside of

9    those specific circumstances -- again, on the record before

10   me -- that made it possible, on the 6th, for the defendant to

11   engage in such an assault, the likelihood of future violence to

12   the community or to other law enforcement officer appears, in

13   my view, small, particularly given his lack of any violent

14   criminal history and the absence of any indications of his

15   commitment to political violence going forward.

16            So, I do believe that he falls into that category of

17   defendants which this Court has released, even despite

18   assaultive conduct on law enforcement.  Point to the decisions

19   in *Owens*, *Klein*, *Emanuel Jackson*, and the *McCaughey* case.  None

20   of those defendants were part of any organized gang, had

21   engaged in any prior planning or coordination with others prior

22   to the participation on January 6, nor did any of those

23   defendants, like Mr. Perkins, have any significant criminal or

24   violent history.  In other words, as with respect to Perkins,

25   their dangerousness appeared to be limited to the conduct on

1    January 6.  So I do believe that this last factor, the

2    dangerousness of this defendant, also weighs in favor of his

3    pretrial -- I'm sorry, in favor of his pretrial release.

4         So I do not believe that the government has proven by

5    clear and convincing evidence that this defendant presents a

6    danger to an individual or the community, certainly not a

7    danger that would otherwise be reasonably mitigated by strict

8    conditions of release.  I am prepared to impose such

9    conditions.  They are as follows:

10        I will order, first of all, that the defendant is --

11   I'm going to order him to home detention with GPS location

12   monitoring.  He's going to be restricted to his residence at

13   all times except for employment, education, medical

14   appointments, religious services, any other substance or mental

15   health or physical health treatment, attorney visits and court

16   appearances, or other activities approved in advance by the

17   pretrial services office.

18        I will also order that he stay away from Washington,

19   D.C. unless for court, pretrial or consultation with his

20   attorney.  He is to call pretrial services in his home

21   jurisdiction as directed.  He's to check in with them.  He's to

22   verify his address, if he's not done so already.  He's to

23   advise pretrial services of any travel within the United States

24   outside of his home jurisdiction.  The only place he could

25   travel is to D.C. for in-person court appearance.  But he will

1   also need to notify pretrial before he does so.

2              He's to participate in all future proceedings as

3   projected -- as directed, sorry.  He's not to possess any

4   firearms, weapons or destructive devices.  I do think there's a

5   note here that he might have a gun in his home, so we'll

6   discuss that in a moment.

7              He's not to commit any state, federal or local crimes

8   while on release in this case.  He's not to use or unlawfully

9   possess a narcotic drug or any other controlled substance as

10   defined by federal law, unless prescribed by a licensed medical

11   practitioner.  He's to receive substance abuse evaluation and

12   treatment as directed by pretrial services, testing as directed

13   by pretrial services, drug testing, if necessary, and directed

14   by pretrial services.

15              He's also to report, as soon as possible, to pretrial

16   services every contact with law enforcement personnel,

17   including arrests, questioning, or traffic stops.  He's also to

18   avoid all contact, whether directly or indirectly, with any

19   other -- other than in the presence of counsel, with any other

20   person who is or may be a witness in the investigation or

21   prosecution of this case.  I specifically direct him to not

22   have any contact with any of his codefendants, other than in

23   the presence of counsel.

24              I do want to address the issue of guns.  I do have a

25   note here that someone -- I don't know if it's the defendant or

1    his son -- has a shotgun, handgun on his property.  I don't

2    care whose gun it is, I don't care who owns it; it can't be

3    there.  So it needs to be secured outside of the home.

4            I'll hear from the defense on that issue.  I don't

5    know if you've already discussed it or if you need a moment to

6    speak to Mr. Perkins.

7            MS. MacEOIN:  I spoke to his wife, Brit Perkins, who

8    assured me that she could -- there are two weapons in the home,

9    that she can have them sent to a relative's house and they will

10   not be in their home.

11           THE COURT:  Okay.  Any other issues with the

12   conditions of release that I've set for this defendant?

13   Counsel?

14           MS. MacEOIN:  Not from the defense, Your Honor.  I

15   would like a bit of a clarification about -- this is a small

16   town and no contact with anyone involved in the case, I assume

17   that's codefendants as well.

18           THE COURT:  Yes.

19           MS. MacEOIN:  There could be some incidental contact

20   in public places.  I just want to get clarification that as

21   long as they're not talking -- you know, they're both at the

22   grocery store, they're both in public places, they should avoid

23   that if possible, but that itself is not a violation.

24           THE COURT:  I think that's right.  You're going to

25   run into them.  Again, he shouldn't be going to the grocery

1    store.  His wife is going to have to do that.

2            MS. MacEOIN:  That's correct, Your Honor.

3            THE COURT:  He is a handyman, so I can understand

4    that he might pass by a codefendant in the town.  You know,

5    some incidental contact like that is understandable.  But, no,

6    he's not to have any communication with them.  So if they see

7    each other, he needs to -- there should be no communication,

8    whether in person, by text, through a third-party.  There's no

9    communication with your codefendants.  You need to stay away

10   from them as best you can, other than with counsel present.

11           Any other questions, Counsel, with respect to these

12   conditions of release?

13           MS. MacEOIN:  Not from the defense, Your Honor.

14           THE COURT:  Government, do you have any questions or

15   is there any other conditions of release you want to recommend?

16           MS. KEARNEY:  No, Your Honor.  Thank you.

17           THE COURT:  I'll ask pretrial, too.  I think I've

18   encompassed most of what -- at least pretrial down in Florida,

19   who, by the way, also recommended conditions of release for

20   this defendant some time ago.  But, Pretrial, is there any

21   confusion about pretrial conditions that I'm going to set?

22           PRETRIAL SERVICES:  No, Your Honor.

23           THE COURT:  All right.  Mr. Perkins, I hope you heard

24   all of that.  Did you hear these conditions of release and are

25   you prepared to comply with them?

1          THE DEFENDANT:  Yes, sir, Your Honor.

2          THE COURT:  Mr. Tran, go ahead and swear in this

3     defendant to his conditions of release.

4          THE COURTROOM DEPUTY:  Mr. Perkins, do you solemnly

5     swear to follow the conditions of your release as set forth by

6     this Court, so help you God?

7          THE DEFENDANT:  I do.

8          THE COURT:  Mr. Perkins, I'm going to give you some

9     other warnings as well.  I give everyone who is released these

10    warnings.  Please listen carefully.  You've heard my conditions

11    of release.  It's important that you comply with each of those

12    conditions.  If you fail to comply with any of my conditions of

13    release, a warrant can be issued for your arrest, your

14    conditions of release could be revoked and you could be held

15    pending trial.  You could also face an additional criminal

16    charge for contempt of court.

17         Your most important condition of release is that you

18    must not commit a crime while on release.  If you were to

19    commit a crime while on release, well, again, a warrant could

20    be issued for your arrest, your conditions of release could be

21    revoked, you could be held pending trial.  You also face a

22    longer sentence for having committed a crime while on release

23    in another case.

24         I'm going to set a next date for you here in a

25    moment.  It's important that you show up for every date.

1    Whether it's in person or remote, you got to show up to court.

2    If at any point you fail to show up for court, a warrant can be

3    issued for your arrest, your conditions of release could be

4    revoked and you could be held pending trial.  You also face an

5    additional charge, criminal charge for failure to appear for

6    court.

7            Mr. Perkins, I also want to remind you that it is a

8    crime under federal law to try to influence a juror, to

9    threaten or attempt to bribe a witness or other person who may

10   have information about this case; to retaliate against anyone

11   for providing information about this case, or to otherwise

12   obstruct the administration of justice.

13           Mr. Perkins, do you understand all of those warnings

14   that I've given you?

15           THE DEFENDANT:  Yes, sir, Your Honor.

16           THE COURT:  Let's talk about next date.  Is there a

17   next date already set in this case?  I think there is one.

18   Government?

19           MS. KEARNEY:  We don't have one yet from Judge

20   Nichols.  It will likely be July 28, but that has not been

21   firmly set.

22           THE COURT:  Mr. Tran, you don't have another set?

23           THE COURTROOM DEPUTY:  No, Your Honor.  I was

24   informed by the courtroom deputy at that time she would be

25   setting a date for the parties.

```
1          THE COURT:  So you all are working out a next date.

2     Counsel, please, obviously, let Mr. Perkins know when that next

3     date is.

4          Mr. Perkins, you need to show up whenever that next

5     date is.

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  It will probably be a remote proceeding

8     for the next few months.  But it's important that you show up,

9     whether it's remote or in person.  Do you understand that?

10          THE DEFENDANT:  Yes, sir, Your Honor.

11          THE COURT:  Anything further from the government?

12          MS. KEARNEY:  No.  Thank you.

13          THE COURT:  Counsel for Mr. Perkins, I will be doing

14     written conditions of release.  Typically the defendant would

15     sign them and walk out of the court with them.  We're not going

16     to be able to do that.  But when we have these conditions of

17     release in writing completed, I will send them to you.  And I

18     do direct that you send them to Mr. Perkins immediately so he

19     can have it in writing, all of the things that he's supposed to

20     do and not do while on release in this case.

21          MS. MacEOIN:  I will do that, Your Honor.

22          THE COURT:  Okay.  Anything further, Government?

23          MS. KEARNEY:  Not at this time.  Thanks very much.

24          THE COURT:  Anything further from the defense?

25          MS. MacEOIN:  No, Your Honor.  Thank you.
```

```
 1              THE COURT:  So, Mr. Tran, I forget, I don't know
 2     where this defendant is, Mr. Perkins.  Is there some special
 3     thing we've got to submit?
 4              THE COURTROOM DEPUTY:  Yes.  Since he's currently in
 5     the Middle District of Florida, outside of our jurisdiction, we
 6     just need a short order from the Court explaining that he's
 7     released from where he's incarcerated.
 8              THE COURT:  We'll get that filed as soon as possible
 9     this afternoon.
10              Still, Mr. Perkins, I don't know what it's like down
11     there in Florida, but up here it could take hours for you to be
12     released.  Sometimes you're not be released until 8 or 9 o'clock
13     up here in D.C.; I don't know if they're more efficient down
14     there.  But you should be out of jail tonight.
15              THE DEFENDANT:  Thank you, Your Honor.
16              THE COURT:  All right, then, parties are excused.
17                              *   *   *
18
19
20
21
22
23
24
25
```

1

2                    CERTIFICATE OF OFFICIAL COURT REPORTER

3

4        I, JANICE DICKMAN, do hereby certify that the above and

5    foregoing constitutes a true and accurate transcript of my

6    stenographic notes and is a full, true and complete transcript

7    of the proceedings to the best of my ability.

8                         Dated this 24th day of September, 2021

9

10

11                    _____

12                    Janice E. Dickman, CRR, CMR, CCR
                      Official Court Reporter
13                    Room 6523
                      333 Constitution Avenue, N.W.
14                    Washington, D.C.  20001

15

16

17

18

19

20

21

22

23

24

25